UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

MODERN PLASTICS CORPORATION,

      Debtor.

_____/

NEW PRODUCTS CORPORATION et al.,      Case Nos: 1:15-CV-1026, 1:15-CV-1200,
      1:15-CV-1249

      Appellants,      HON. JANET T. NEFF

v.

DICKINSON WRIGHT PLLC et al.

      Appellees.

_____/

## OPINION

This is a consolidated appeal from several orders of the Bankruptcy Court of the Western District of Michigan. Modern Plastics Corporation filed for bankruptcy under Chapter 7 of the Bankruptcy Code. In connection with the bankruptcy proceedings, one of Modern Plastics' creditors, New Products Corporation, filed an adversary proceeding against the former bankruptcy trustee, Thomas Tibble. As part of the discovery process in the adversary proceeding, New Products' counsel, Mark Demorest, served subpoenas *duces tecum* on seven non-parties: Steven M. Siravo; Bank of America, NA ("BOA"); Theodore B. Sylwestrzak; John G. Cameron, Jr.; Dickinson Wright PLLC; Evergreen Development Company, LLC; and 3 OCIR 337, LLC. Appellants are New

Products and Demorest. Appellees are the seven non-party recipients of the subpoenas ("Recipients").

In this appeal, Appellants challenge the bankruptcy court's order requiring New Products and Demorest to pay $166,187.50 of Recipients attorney's fees and expenses for responding to the subpoenas. Appellants also challenge the bankruptcy court's orders finding them in contempt for failing to pay the aforementioned amount, and ordering them to pay $4,275 of Recipients' attorney's fees and costs for bringing a motion for contempt. Having considered the parties' briefs and the record, the Court finds that oral argument is unnecessary. For the reasons stated herein, the Court affirms the bankruptcy court's orders.

## I. Background

### A. Adversary Proceeding

Modern Plastics ceased operations in 2008 and filed its petition for relief under Chapter 7 of the Bankruptcy Code in January 2009. Tibble was appointed to be the trustee for the bankruptcy estate. The assets in the estate included 12 acres of real estate in Benton Harbor, Michigan, on which sat Modern Plastics' offices, warehouse, and a manufacturing facility (the "Property"). At the time, the Property was encumbered by mortgages held by Bank of America ("BOA") and tax liens. Tibble attempted to sell the Property several times in 2009, with BOA's consent, but he was not successful. 3 OCIR 337 and Evergreen were potential purchasers of the Property. BOA, 3 OCIR 337, and Evergreen were represented by the law firm Dickinson Wright.

The condition of the buildings on the Property deteriorated substantially over the next few years as a result of looting, vandalism, and lack of maintenance. In March 2013, New Products purchased BOA's mortgages on the Property. Several months later, New Products brought an

adversary action against Tibble, claiming that he breached his fiduciary duties by failing to maintain and protect the Property. Demorest represented New Products in the adversary proceeding.

**B. Subpoenas**

To obtain information relevant to New Products' claims against Tibble, Demorest issued subpoenas *duces tecum* to Dickinson Wright, Dickinson Wright attorneys Sylwestrzak and Cameron, BOA, and BOA Vice President Steven Siravo.[1] The subpoenas sought 36 categories of documents spanning a nine-year time period dating back to January 1, 2005. Demorest served the subpoenas on August 28, 2014, and requested compliance within a little over two weeks, due to deadlines in the adversary proceeding. The scheduling order in the adversary proceeding required the parties to file any motions for summary judgment by September 29, 2014. Demorest apparently wanted to review any documents produced in response to the subpoenas before the deadline for filing a motion for summary judgment.

On September 4, Recipients' counsel, Christina K. McDonald, e-mailed Demorest and requested an extension of time for compliance with the subpoenas until October 31, 2014. She told Demorest that it would take "quite some time and work to determine what might exist" in response to the subpoenas. (PageID.673.)[2] Demorest replied the next day, suggesting that they talk after McDonald "had a chance to review the Subpoena." (PageID.672.) McDonald responded that the subpoenas were self-explanatory, and she wanted to know if Demorest would grant an extension. (PageID.671.) Demorest told her that they could discuss an extension, but he did not understand why an additional six weeks would be necessary. (PageID.670.) McDonald explained that an extension

---

[1]Siravo was the loan officer in charge of the Modern Plastics account.

[2]All citations to "PageID.__" refer to the record filed in Case No. 1:15-cv-1200, unless otherwise noted.

was necessary because of the scope of the subpoena request, the amount of preliminary work required, and the unavailability of personnel. (*Id.*) McDonald suggested a procedure whereby Recipients would file a written response to the subpoena, including any objections and/or a motion for a protective order, by September 26. (*Id.*) In addition, Recipients would propose a date for inspection and copying of non-privileged documents, which McDonald anticipated would be October 31. McDonald offered to inform Demorest before September 26 if she believed that the documents would not be ready by October 31. (*Id.*)

Demorest replied about a week later, on September 11. He told McDonald that he would agree to extend the time for a written response to the subpoenas to September 23, but that he needed the documents responsive to the subpoena no later than October 10. (PageID.676.)

McDonald wrote Demorest on September 15 and expressed concern that an October 10 deadline would be a "very short time frame" for responding to the subpoenas, given the "enormous breadth and scope of the requests and the amount of work that will be required to assess, gather and produce potentially responsive materials[.]" (PageID.770.) She also expressed "very real concerns about the exceedingly broad scope of the requests, the undue burden they place on Respondents, the obvious request for what [Demorest] must reasonably know to be privileged communications, and the ultimate purpose for [his] requests." (PageID.771.) McDonald indicated that the recipients of the subpoenas would be willing to proceed based on the assumption that both sides would be able to agree on a protection order that would, among other things, provide for the reimbursement of costs. (*Id.*) McDonald also provided the recipients' formal, written objections to the subpoenas. Among other things, Recipients objected to production of documents without compensation for the costs and

expenses of copying and producing the requested documents, including reasonable attorney's fees. (*See* Response of Steven Siravo and BOA to Subpoena, PageID.489.)

Demorest did not respond immediately. Four days later, however, he issued a subpoena to 3 OCIR 337, another client of Dickinson Wright. This subpoena requested 58 categories of documents dating back to January 1, 2005, including 36 of the same categories in the other subpoenas. The subpoena to 3 OCIR 337 specified October 10 as the deadline for compliance.[3]

On September 23, Demorest contacted McDonald and complained that BOA and Dickinson Wright had possessed their subpoenas for nearly three weeks, which was "more than adequate time to gather the requested information." (PageID.317.) He offered to "discuss the most efficient way to get the requested documents[.]" (*Id.*) McDonald responded that three weeks had not been enough time, but that she would provide responsive documents as soon as she was reasonably able to do so. She also promised to provide a draft of a stipulated protective order. (*Id.*)

On October 2, McDonald provided Demorest with the promised draft of the protective order, which provided that New Products "agrees to compensate Respondents for all actual costs and expenses incurred in copying and producing the requested documents, but those costs shall not include attorney's fees or lay labor costs unless those expenses are approved by the Court pursuant to a request or motion separate from this Stipulated Order." (PageID.1135.)

In an email to Demorest, McDonald explained the steps that had been taken thus far to respond to the subpoenas, including: identifying the relevant custodians at BOA and issuing them litigation holds, receiving BOA's paper files related to Modern Plastics, running a search of the

---

[3] 3 OCIR 337 served its objections to this subpoena on October 10, 2014. Like the other Recipients, 3 OCIR 337 objected that the subpoena did not provide for compensation of the costs and expenses incurred in copying and producing the requested documents. (PageID.543.)

relevant custodians' email messages using the term "Modern Plastics," creating a list of attorneys and staff at Dickinson Wright working on matters related to Modern Plastics, issuing a litigation hold to these individuals and contacting them to determine their involvement in the matters related to Modern Plastics, identifying the individuals at Dickinson Wright most likely to have responsive materials, and searching the email files of these individuals using the term "Modern Plastics." (PageID.688-689.) The searches had turned up six boxes of documents and nearly 8,000 email files, not including BOA's email correspondence. McDonald explained that it would not be possible to review all of this material by October 10, but she offered to produce documents on a "rolling basis." (PageID.689.) She anticipated that review of the hard-copy documents would be complete by October 15, but that the email correspondence would take longer to review because much of it would be privileged or not subject to production. She suggested that Demorest could speed up the process by proposing additional search terms or limiting the list of custodians. Otherwise, she would proceed as proposed. (*Id*.)

Demorest did not respond to McDonald's email. On October 13, he issued a subpoena to Evergreen Development Company, another potential purchaser of the Property and a client of Dickinson Wright. This subpoena requested 57 categories of documents dating back to January 1, 2005.[4]

Near the end of October, having received no response from Demorest to her concerns about the scope of the subpoenas and the difficulty in complying with them, to her proposed protective order, or to her suggestions for modifying the subpoenas, McDonald notified Demorest that BOA's

---

[4]Evergreen served its objections to this subpoena on October 31, 2014. Like BOA, it objected to the fact that the subpoenas did not provide for compensation of expenses incurred for compliance.

vendor had completed an initial search of BOA's emails and identified nearly 13,000 potentially-responsive documents containing the search term "Modern Plastics." (PageID.688.) McDonald again invited Demorest to limit the scope of his requests and warned that "BOA's review is likely to be quite expensive." (*Id.*) She also notified him of her understanding that New Products had agreed to reimburse BOA for its costs of compliance.

Another two months passed without word from Demorest. In late December, he attempted to contact McDonald to arrange a conference call. She responded by email on January 5, 2015, explaining that she had not received any response to her suggestion to limit the scope of responsive documents, so BOA and Dickinson Wright went ahead with their review. (PageID.832.) McDonald expected that documents responsive to each of the subpoenas would be ready for production by mid to late January, subject to the terms of a protective order. She told Demorest that BOA had incurred in excess of $100,000 in fees and expenses, and that Dickinson Wright had incurred in excess of $50,000 in fees and expenses. 3 OCIR 337's and Evergreen's expenses were "nominal in comparison." (PageID.833.) She explained that none of the Recipients would turn over their documents without payment.

Apparently, Demorest called McDonald the next day and objected to the costs. A month later, on February 2, Demorest sent McDonald a letter contending that: Recipients' request for reimbursement of $150,000 in costs was "completely unreasonable"; Recipients were not entitled to reimbursement under Rule 45 of the Federal Rules of Civil Procedure because the court had not ordered them to comply with the subpoena; and Recipients had waived the right to seek costs by raising only "general" objections to the subpoenas. (PageID.694-695.)

## C. Costs of Compliance with the Subpoenas

Recipients subsequently filed a motion for a protective order that sought reimbursement of approximately $180,000 in fees and expenses incurred by Recipients for responding to the subpoenas. New Products opposed this motion and filed a motion to compel Recipients to turn over the relevant documents and to hold Recipients in contempt for failing to comply with the subpoenas. The bankruptcy court held a hearing on the parties' motions on April 16, 2015. At the hearing, Demorest acknowledged that his client would have to pay some of the costs for complying with the subpoenas, particularly copying costs, but not attorney's fees or labor costs. (4/16/2015 Hr'g Tr. 58-59, PageID.942-943.) After the hearing, the court granted the motion for a protective order and denied the motion to compel as moot. The bankruptcy court determined that New Products would bear some of the burden of the costs of compliance, but reserved the question as to the amount and nature of the costs that would be shifted to New Products or its counsel.

Recipients turned over documents responsive to the subpoenas to Demorest and New Products on May 6, 2015. On June 24, the bankruptcy court held an evidentiary hearing on the issue that it had reserved. After the hearing, the court held that New Products and Demorest would be jointly and severally liable to BOA in the amount of $104,770.00, and jointly and severally liable to 3 OCIR 337 and Evergreen in the amount of $61,417.50. (7/23/2015 Mem. of Decision & Order, PageID.106.) These amounts included the fees paid by BOA to its third-party search vendor, Huron Consulting Group, and a portion of the legal fees charged by Dickinson Wright to BOA, 3 OCIR 337, and Evergreen in connection with responding to the subpoenas. The court directed Appellants to pay these sums to Dickinson Wright, who would distribute the money to its clients. (*Id.*)

**D. Reconsideration & Motion to Stay**

Appellants moved for reconsideration of the order requiring them to pay the subpoena expenses and filed a motion to stay enforcement of the order until 14 days after a decision on the motion for reconsideration. The court denied the motion for reconsideration and the motion to stay at the same time. (8/26/2015 Mem. of Decision & Order, PageID.177.)

**E. Contempt Proceedings**

Dickinson Wright subsequently asked New Products and Demorest for payment in accordance with the court's order. Appellants refused to pay in full, but proposed a payment plan. Recipients filed a motion to hold Appellants in contempt. In response, Appellants filed affidavits claiming that Demorest did not have the full amount and that New Products could not pay in full without suffering "substantial hardship." The court held a hearing on the contempt motion and concluded that Appellants' responses were inadequate as a defense to contempt because they were "non-specific and conclusory[.]" (10/14/2015 Interim Order Regarding Contempt Mot., PageID.338, 339.) However, the court permitted Appellants to file a supplemental response before the court ruled on the contempt motion.

In their supplemental response, Appellants' provided no further details regarding their inability to pay or the hardship that New Products would face if required to make payment in full. Instead, they asserted that New Products had made arrangements to pay the full amount due. (PageID.342.) Appellants proposed to make full payment to the Clerk of the Court "as an appeal bond," and filed a motion to stay collection pending appeal. (*Id.*) They contended that payment to the Clerk of the Court would render the motion for contempt moot. (PageID.343.)

The bankruptcy court held that the supplemental response "establishes, rather than refutes,

Mr. Demorest's and New Products'[] contempt." (11/2/2015 Order Finding Contempt, PageID.22.) The court found them in contempt of the July 23, 2015 order and directed them to pay the full amount due to Dickinson Wright within seven days. The court also awarded Recipients their reasonable attorney's fees for bringing the motion for contempt. (PageID.24.) Before the court ruled on Appellants' motion for a stay pending appeal, Appellants' paid the full amount due under the bankruptcy court's July 23, 2015 order to Dickinson Wright. The court subsequently held a hearing on the motion for a stay and denied it because Appellants had already paid what was due. (11/16/2015 Order Denying Stay Pending Appeal, PageID.394.)

Dickinson Wright submitted an affidavit and other documents seeking approximately $25,000 in fees for bringing the motion for contempt on behalf of its clients. After considering these documents and the parties' arguments at a hearing, the bankruptcy court ordered New Products and Demorest to pay Dickinson Wright $4,275.00 for bringing the contempt motion. (11/18/2015 Order Imposing Contempt Award, PageID.397, 401.) This amount was in line with Demorest's estimate that $3,000 to $5,000 would be a reasonable amount of fees for prosecuting a contempt motion.

New Products and Demorest now appeal the foregoing orders.

### III. Jurisdiction

This Court has jurisdiction over these appeals under 28 U.S.C. § 1334 and the Court's order referring all cases under Title 11 to the bankruptcy court. W.D. Mich. LCivR 83.2. As explained in more detail below, Appellants have appealed from orders in an adversary proceeding, which is a "core proceeding" under 28 U.S.C. § 158(a)(1). This Court has jurisdiction to hear appeals from "final judgments, orders, and decrees" of bankruptcy judges in proceedings referred to them. 28 U.S.C. § 158(a)(1). The adversary proceeding concluded with a judgment entered on January 21,

2016. In addition, a bankruptcy court order imposing sanctions is a final order. *In re Royal Manor Management, Inc.*, 525 B.R. 338, 345 (B.A.P. 6th Cir. 2015); *In re Hake*, No. 06–8007, 2006 WL 2621116, at *1 (B.A.P. 6th Cir. Sept. 14, 2006).

## IV. Standard of Review

The bankruptcy court's conclusions of law are reviewed *de novo*. *Rowell v. Chase Manhattan Auto. Fin. Corp. (In re Rowell)*, 359 F. Supp. 2d 645, 647 (W.D. Mich. 2004). "Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Menninger v. Accredited Home Lenders (In re Morgeson)*, 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007).

The Court applies the clearly erroneous standard when reviewing the bankruptcy court's findings of fact. *Stamper v. United States* (*In re Gardner*), 360 F.3d 551, 557 (6th Cir. 2004). "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Riverview Trenton R.R. Co. v. DSC, Ltd. (In re DSC, Ltd.)*, 486 F.3d 940, 944 (6th Cir. 2007) (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985)).

The Court reviews the bankruptcy court's imposition of discovery sanctions for abuse of discretion. *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 366 (6th Cir. 1997). Under this standard, the bankruptcy court's decision is to be afforded "great deference"; it "will be disturbed only if the . . . court relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." *Blue Cross & Blue Shield Mut. of Ohio v. Blue Cross & Blue Shield Ass'n*, 110 F.3d 318, 322 (6th Cir. 1997).

Appellants contend that this Court should review all of the bankruptcy court's determinations *de novo*, arguing that the bankruptcy court did not have statutory authority to enter the orders requiring Appellants to pay the expenses for the subpoenas and finding them in contempt, because those orders did not arise in a core proceeding. Appellants assert that the bankruptcy court should have submitted proposed findings of fact and conclusions of law that are subject to *de novo* review by this Court.

"When a district court refers a case to a bankruptcy judge, that judge's statutory authority depends on whether Congress has classified the matter as a '[c]ore proceedin[g]' or a '[n]on-core proceedin[g],'" *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1940 (2015) (quoting 18 U.S.C. §§ 157(b)(2), (4)).

> Congress gave bankruptcy courts the power to "hear and determine" core proceedings and to "enter appropriate orders and judgments," subject to appellate review by the district court. § 157(b)(1); *see* § 158. But it gave bankruptcy courts more limited authority in non-core proceedings: They may "hear and determine" such proceedings, and "enter appropriate orders and judgments," only "with the consent of all the parties to the proceeding." § 157(c)(2). Absent consent, bankruptcy courts in non-core proceedings may only "submit proposed findings of fact and conclusions of law," which the district courts review *de novo*. § 157(c)(1).

*Id.* A proceeding is core if it invokes a substantive right provided by Title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case. *Sanders Confectionery Prods., Inc. v. Heller Financial, Inc.*, 973 F.2d 474, 483 (6th Cir. 1992).

The adversary proceeding filed by New Products against the Chapter 7 bankruptcy trustee was a core proceeding. Indeed, in its complaint against the trustee, New Products asserted as much. (Case No. 1:15-cv-1026, PageID.225.) Likewise, the bankruptcy court determined that New Products' adversary action was a core proceeding because it is a matter "concerning the administration of the estate[.]" 28 U.S.C. § 157(b)(2)(A). Moreover, a claim that the bankruptcy

trustee breached his duties to the creditors can only arise in a case under Title 11. Thus, the bankruptcy court had jurisdiction to "enter appropriate orders and judgments" in the adversary proceeding. 28 U.S.C. § 157(b)(1).

The dispute between Appellants and Recipients regarding payment for the cost of compliance with the subpoenas arose in the context of the adversary proceeding. New Products issued the subpoenas for the purpose of obtaining evidence for the adversary proceeding, and attempted to enforce the subpoenas in that proceeding. Bankruptcy courts routinely issue orders regarding subpoenas in adversary proceedings. *See, e.g.*, *In re SII Liquidation Co.*, No. 10-60702, 2015 WL 1365591 (Bankr. N.D. Ohio Mar. 20, 2015) (issuing an order on a motion to quash a subpoena in an adversary proceeding). Thus, the dispute between Appellants and Recipients regarding the  subpoenas was part of a core proceeding.

Appellants also challenge the bankruptcy court's order finding them contempt for failing to abide by an order in the adversary proceeding. "Civil contempt proceedings arising out of core matters are themselves core matters." *In re Burkman Supply, Inc.*, 217 B.R. 223 (W.D. Mich. 1998) (quoting *In re Skinner*, 917 F.2d 444, 448 (10th Cir. 1990)).

In short, the bankruptcy court's orders regarding the subpoenas and the contempt sanctions arose in a core proceeding; thus, the bankruptcy court had authority to "hear and determine" the dispute between Appellants and Recipients and to "enter appropriate orders and judgments" therein. Consequently, the bankruptcy court's findings are subject to the standard of review applicable to federal appellate proceedings, i.e., *de novo* review for conclusions of law and clear-error review for findings of fact. *Curreys of Neb., Inc. v. United Producers, Inc. (In re United Producers, Inc.)*, 526 F.3d 942, 946 (6th Cir. 2008).

**V. Analysis**

**A. The Bankruptcy Court Properly Shifted the Subpoena Expenses to Appellants**

The bankruptcy court held that Appellants did not comply with their duty under Rule 45 of the Federal Rules of Civil Procedure to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. 45(d)(1). Rule 45 requires a court to "enforce this duty and impose an appropriate sanction–which may include lost earnings and reasonable attorney's fees–on a party or attorney who fails to comply." *Id.*

The bankruptcy court also relied on Rule 45(d)(2) to determine how much of the cost of compliance with the subpoenas to shift to Appellants. This rule provides additional protection for non-party recipients of a subpoena. It permits a person commanded to produce documents to serve written objections on the person issuing the subpoena "before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B)(i). Some courts have held that after an objection has been made, the recipient is not obligated to comply with the subpoena until ordered to do so. *See Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 493 (9th Cir. 1983). The party serving the subpoena may seek an order to compel production, and any order compelling a non-party to produce documents after an objection has been made must protect that party from "significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii). Rule 45(d)(2), which was formerly Rule 45(c)(2), was added to protect non-parties from "significant expense resulting from involuntary assistance to the Court." Fed. R. Civ. P. 45 (Advisory Committee Notes, 1991 Amendment, Subdivision (c)).

Rule 45 reflects a concern to protect recipients of subpoenas from undue burden or expense, particularly recipients who are not parties to the underlying litigation. "Courts addressing the issue

of how the costs of subpoena compliance should be allocated have consistently emphasized that non-parties who have no interest in the litigation should not be required to subsidize the costs of the litigation." *Broussard v. Lemons*, 186 F.R.D. 396, 398 (W.D. La. 1999) (collecting cases). "Rule 45's mandatory cost-shifting provisions promote the most efficient use of resources in the discovery process. When nonparties are forced to pay the costs of discovery, the requesting party has no incentive to deter it from engaging in fishing expeditions for marginally relevant material. Requesters forced to internalize the cost of discovery will be more inclined to make narrowly-tailored requests reflecting a reasonable balance between the likely relevance of the evidence that will be discovered and the costs of compliance." *Linder v. Calero-Portocarrero*, 183 F.R.D. 314, 322-23 (D.D.C. 1998).

Applying Rule 45(d)(1), the bankruptcy court concluded that the subpoenas imposed an undue burden or expense on Recipients. In particular, the court noted the broad scope of the document requests, including the many different categories of documents requested (36 to 58) and the expansive definition of "document" to include both tangible documents and electronically stored information ("ESI") "mentioning, referring to, or related to Modern Plastics or the Modern Plastics Property." (*See, e.g.*, Subpoena to Siravo and BOA, PageID.417.) In addition, the subpoenas requested documents from a nine-year period of time, dating back to September 2005. The court questioned the relevance of any documents from before 2009, when Tibble became the bankruptcy trustee. *See Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49-51 (S.D.N.Y. 1996) ("[T]o the extent a subpoena sweepingly pursues material with little apparent or likely relevance to the subject matter it runs the greater risk of being found overbroad and unreasonable."). The court also noted the short deadline for compliance with the subpoenas and the targets of the subpoenas,

including "a global banking giant and a national law firm." (7/23/2015 Mem. of Decision & Order, PageID.91.) A bank is "highly regulated and highly sensitive to customer privacy issues," such that "addressing these concerns would take considerable time (including attorney time) and other resources." (*Id.*) Similarly, serving a subpoena on a law firm in a matter in which the firm or its clients had been retained would "necessitate review [by attorneys] for privileged communications and work product." (*Id.*)

The court also concluded that Appellants failed to take reasonable steps to avoid imposing an undue burden or expense. Recipients repeatedly notified Demorest of their concerns with the subpoenas, their efforts at compliance, and their intent to seek reimbursement of fees and costs. Recipients also provided a proposed protective order. Demorest did not meaningfully respond to any of these concerns or proposals, except to extend the deadlines for compliance. As an experienced litigator, Demorest knew or should have known of the burden that his requests would impose on Recipients. He could have avoided some or all of this burden by providing some input to McDonald on the ESI protocol or narrowing the subpoena requests. For instance, the bankruptcy court noted that Demorest could have requested Siravo's work file from BOA, instead of almost 10 years of documents from the entire organization. Additionally, Demorest could have requested documents directly from the clients of Dickinson Wright rather than serving subpoenas on lawyers and a law firm who were more likely to possess information that was protected by attorney-client privilege. Rather than discuss the objections with Recipients, Demorest tacitly encouraged them to continue working toward compliance with the subpoenas, knowing that they intended to seek compensation for that work. When Recipients finally completed the task that Appellants had assigned to them, Appellants refused to provide significant compensation for it.

16

As a sanction for failing to abide by the duty in Rule 45(d)(1), and in light of the requirement in Rule 45(d)(2) to protect Recipients from "significant expense," the bankruptcy court required New Products and Demorest to pay for the "lion's share" of the reasonable costs and expenses of compliance with the subpoenas. (*Id.*, PageID.100.)

### 1. Rule 52(a)

Appellants contend that the bankruptcy court failed to make specific findings of fact and conclusions of law as required by Rule 52(a) of the Federal Rules of Civil Procedure. This rule requires that a district court, "[i]n an action tried on the facts without a jury or with an advisory jury, . . . must find the facts specially and state the conclusions of law separately." Fed. R. Civ. P. 52(a)(1). The bankruptcy court held that Rule 52(a)(3) applied, which states that "[t]he court is not required to state finds or conclusions when ruling on a motion under Rule 12 or 56 or, unless these rule provide otherwise, *any other motion*." Fed. R. Civ. P. 52(a)(3) (emphasis added).

Appellants cite *G.G. Marck & Assocs., Inc. v. Peng*, 309 F. App'x 928 (6th Cir. 2009), which suggests that an order and judgment imposing sanctions requires a court to make specific findings of fact and conclusions of law under Rule 52(a)(1). *Id.* at 931. Nevertheless, even when Rule 52(a)(1) applies,

> [i]t is not necessary for the [Bankruptcy] Judge to prepare elaborate findings on every possible issue raised at trial. However, there must be findings, in such detail and exactness as the nature of the case permits, of subsidiary facts on which an ultimate conclusion can rationally be predicated. The findings should be explicit so as to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the grounds on which the trial court reached its decision.

*Orlett v. Cincinnati Microwave, Inc.*, 954 F.2d 414, 418 (6th Cir. 1992). In this case, the findings and conclusions of the bankruptcy court are sufficiently detailed to give this Court an understanding

of the basis for the bankruptcy court's decision. Appellants contend that the bankruptcy court did not identify any particular requests in the subpoenas that imposed an undue burden. The court was not required to do so, however. It found that the subpoenas imposed an undue burden or expense for reasons that were common to most, if not all, the subpoena requests. For instance, the expansive definition of "document" applied to all the requests in the subpoenas. In addition, all of the subpoena requests sought documents dating back to 2005.

Likewise, there is a sufficient explanation of the bankruptcy court's decision to find Appellants in contempt to give this Court a clear understanding of the basis for that decision. Thus, even assuming that Rule 52(a)(1) applies, the bankruptcy court's orders are sufficiently detailed to permit meaningful appellate review.

### 2. Rule 45(d)(1)

Appellants argue that the bankruptcy court lacked authority to award fees and expenses under Rule 45(d)(1) because Recipients failed to show bad faith or an abuse of the subpoena power. This argument is not supported by the text of the Rule, which requires the court to enforce a party's duty "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). The Rule does not require a finding of bad faith. The bankruptcy court found that the subpoenas imposed an undue burden or expense on Recipients and that Appellants failed to take reasonable steps to avoid this burden; these findings are sufficiently explained in the bankruptcy court's opinion and are supported by the record. Thus, the bankruptcy

court did not abuse its discretion in awarding sanctions absent an express finding of bad faith or abuse of the power to issue subpoenas.[5]

Appellants argue that they should not be required to compensate Recipients for expenses incurred to review documents for privilege, citing *Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280 (S.D.N.Y. 2003). In *Zubulake*, the court stated that "the responding party should *always* bear the cost of reviewing and producing [inaccessible] electronic data once it has been converted to an accessible form," because "the producing party has the exclusive ability to control the cost of reviewing the documents" and "the producing party unilaterally decides on the review protocol." *Id.* at 290.

*Zubulake* is distinguishable because it applied Rule 26(c), and the "responding party" was a party to the litigation. Like Rule 45(d), Rule 26(c) permits a court to issue orders that protect a responding party from "undue burden or expense" in complying with discovery. Fed. R. Civ. P. 26(c)(1). Under Rule 26(c), however, both sides are required to provide discovery and both may have to incur some cost in reviewing and producing information to the other side. Different concerns arise when the responding party is not a party to the litigation, has no stake in the litigation, has little or no knowledge of the issues relevant for discovery, and does not stand to benefit from any reciprocal review and production of relevant documents by the other side. Moreover, unlike Rule 26(c), Rule 45(d) specifically protects non-party recipients of subpoenas from "significant expense," a term that is broad enough to include expenses for privilege review. Thus, it does not follow that a non-party must always bear the cost of reviewing and producing information in response to a subpoena.

---

[5]The bankruptcy court did not expressly state that Appellants abused the subpoena power, but the court's findings regarding the undue burden imposed by the subpoenas amounts to the same thing.

### 3. Rule 45(d)(2)(B)

After determining that Appellants' subpoenas had imposed an undue burden or expense on Recipients, and that Appellants failed to take reasonable steps to avoid imposing this burden or expense, the bankruptcy court discussed Rule 45(d)(2)(B) in order to determine how much of the cost of compliance with the subpoenas should be shifted to Appellants. The rule provides that, after an objection to a subpoena is made, and the court orders a non-party to produce documents, the order must protect the non-party from "significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii). Because the bankruptcy court ordered Recipients to produce documents after Recipients timely objected to the subpoenas, the bankruptcy court determined that it "'must order the party seeking discovery to bear at least enough of the cost of compliance to render the remainder 'non-significant.'" (7/23/2015 Mem. Decision & Order, PageID.100 (quoting *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001).) Appellants contend that Rule 45(d)(2)(B) does not apply, for two reasons.

*(a) The objections by Evergreen and 3 OCIR 337 were not timely.*

Appellants argue that Rule 45(d)(2)(B) does not apply to any expenses incurred by Evergreen and 3 OCIR 337 because their objections to the subpoenas were not timely.[6] However, Recipients note that Appellants did not raise this issue before the bankruptcy court. Recipients asserted, and the bankruptcy court agreed, that the objections were timely. Appellants never contended otherwise. "Issues not raised before the trial court are generally considered waived." *In re Johnston*, 209 F.3d 611, 612 n.1 (6th Cir. 2000) (citing *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559 (6th Cir.

---

[6]Recipients concede that 3 OCIR 337's objections were late by one day, but contend that Evergreen's objections were timely. Appellants contend that Evergreen's objections were late by one day.

1990)). "Appellate courts ordinarily do not consider issues raised for the first time on appeal." *Koenig Sporting Goods, Inc. v. Morse Road Co. (In re Koenig Sporting Goods, Inc.)*, 229 B.R. 388, 389 n.1 (B.A.P. 6th Cir. 1999).

The Court declines to consider any issue related to the timing of the objections. Contrary to Appellants' assertion that Rule 45(d)(2) does not apply when untimely objections are filed, courts can consider untimely objections in "unusual circumstances," such as when the subpoena is overbroad on its face and the target of the subpoena is a non-party. *See Am. Elec. Power Co., Inc. v. United States*, 191 F.R.D. 132, 136-37 (S.D. Ohio 1999); *see also* 9A Charles Alan Wright et al., Federal Practice & Procedure Civ. § 2463 (3d ed.) ("[T]he district court, in its discretion, may entertain untimely objections if circumstances warrant."). If the objections were not timely, then Appellants should have raised this issue before the bankruptcy court in the first instance.

> (b) *Recipients incurred expenses before the court ordered them to produce documents.*

Next, Appellants argue that Rule 45(d)(2) does not apply to any expenses incurred by Recipients before the bankruptcy court ordered them to produce documents pursuant to the protective order. Appellants contend that after serving objections, Recipients were required to cease all efforts toward complying with the subpoena until ordered to comply by the court. Then, and only then, would Recipients be entitled to protection from significant expense. Appellants rely on cases outside this district. *See N. Am. Rescue Prods., Inc. v. Bound Tree Med., LLC*, No. 2:08–CV–101, 2009 WL 4110889 (S.D. Ohio Nov. 19, 2009); *Angell v. Kelly*, 234 F.R.D. 135 (M.D.N.C. 2006).

The bankruptcy court rejected Appellants' argument because it is not required by Rule 45. Moreover, it would "reward gamesmanship and punish cooperation." (7/23/2015 Mem. Decision

& Order, PageID.101.) The court saw "no point in penalizing a cooperative [party] who gathers documents while reaching out to the requesting party in an effort to limit the expense and delay for all concerned." (*Id.,* PageID.94.) This Court agrees.

Recipients repeatedly notified Demorest of their concerns with the subpoenas and of their intent to seek reimbursement of the costs and expenses for compliance, but he turned a deaf ear. Rather than work with Recipients to reduce the burden and expense of the subpoenas, or even inquire what those expenses might be, he encouraged them to continue working by extending the deadline for compliance. Only after Recipients had reviewed and prepared documents for production did he object to payment. Allowing Appellants to obtain the benefit of production without payment of Recipients' reasonable fees and expenses would reward inaction by Appellants and is inconsistent with Appellants' duty to take reasonable steps to avoid imposing an undue burden or expense on Recipients. Moreover, Appellants' position would encourage non-compliance with subpoenas and unnecessary court intervention rather than communication, cooperation and expedient discovery.

This case is distinguishable from *Angell*, in which the subpoena recipient voluntarily produced the documents without waiting for a court order to do so. The court held that, without a court order compelling compliance, Rule 45(d)(2)[7] did not apply. *Angell*, 234 F.R.D. at 139. In contrast, Recipients did not turn over their documents to Appellants until ordered to do so in connection with the protective order. Thus, when granting that order, the court was required to protect Recipients from "significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii).

---

[7]The court examined Rule 45(c)(2), which is now Rule 45(d)(2).

The other case cited by Appellants, *North American Rescue Products*, is not persuasive. In that case, the recipient objected to the subpoena and the court subsequently entered an order compelling production. The court held that the subpoena recipient could not seek reimbursement for any of its costs incurred prior to the court order because its compliance up to that point in time was voluntary and not conditioned on reimbursement. *N. Am. Rescue Prods.*, 2009 WL 4110889, at *14. The court cited no authority for this position, other than *Angell*. Notably, *Angell* did not hold that a party compelled to produce documents could not seek reimbursement for expenses incurred prior to the order compelling production.

Moreover, the result in *North American Rescue Products* is not supported by the text of Rule 45 itself. Rule 45(d)(2) contains a simple requirement: the court ordering compliance with the subpoena must protect the non-party subpoena recipient from "significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii). The rule does not distinguish compliance costs incurred prior to the court's order from costs incurred after the order. It might be argued that the term "compliance" in 45(d)(2)(B)(ii) specifically refers to compliance with the court's order, but this interpretation is inconsistent with the rest of Rule. When the term "compliance" is used in other parts of Rule 45(d)(2), it always means compliance *with the subpoena*. *See* Fed. R. Civ. P. 45(d)(2)(B) ("The objection must be served before the earlier of the time specified for compliance [with the subpoena] or 14 days after the subpoena is served."); Fed. R. Civ. P. (d)(2)(B)(i) ("At any time, on notice to the commanded person, the serving party may move the court for the district where compliance [with the subpoena] is required for an order compelling production or inspection."). Thus, the Court discerns no error in the bankruptcy court's conclusion that it could require

Appellants to pay Recipients' reasonable costs of compliance, including costs that were incurred before the bankruptcy court ordered Recipients to turn over the documents.

### 4. Reasonableness of Expenses

Rule 45(d)(1) permits a court to impose a sanction that includes "reasonable attorney's fees." Fed. R. Civ. P. 45(d)(1). Rule 45(d)(2) does not expressly limit the compensable expenses to those that are reasonable, but courts have read it to do so. *See In re Application of Michael Wilson & Partners, Ltd., for Judicial Assistance Pursuant to 28 U.S.C. 1782*, 520 F. App'x 736, 739 (10th Cir. 2013) ("Although Rule 45(c)(2)(B)(ii) protects a nonparty subpoena respondent from 'significant expense,' expenses . . . must be reasonable.") (quoting *United States v. Columbia Broadcasting Sys., Inc.*, 666 F.2d 364, 371 n.9 (9th Cir. 1982)).

Appellants claim that the fees charged by Huron were patently unreasonable. BOA gathered 600 gigabytes of emails and attachments from nine custodians. Huron charged BOA $57,000 to review the 600 gigabytes at a per-unit rate of $95.00 per gigabyte. The bankruptcy court required Appellants to pay this fee. Appellants contend that this fee was unreasonable because only 2 gigabytes were relevant. After eliminating duplicate documents and searching the data for the term "Modern Plastics," Huron narrowed the data set to 2 gigabytes. Appellants claim that Huron should have charged only $190 (i.e., $95 per gigabyte times 2 gigabytes), because BOA could have narrowed the data set down to 2 gigabytes by searching for the term "Modern Plastics" before passing the data to Huron. However, there is no evidence that BOA had the capability to do so.[8] Nor was there any guarantee that Appellants would accept a search protocol that elicited only the e-mails

---

[8] Huron's employee overseeing review of BOA's data, Craig Smith, testified that he had no knowledge about BOA's capabilities in this regard. (6/24/2015 Hr'g Tr., PageID.1190, 1194.)

24

and attachments containing the term Modern Plastics. Indeed, the subpoena to BOA requested all documents *relating to* Modern Plastics and the Modern Plastics property, not just those which contained the term Modern Plastics. McDonald indicated that Recipients would search the ESI for responsive documents using the term "Modern Plastics," but Demorest never responded to this suggestion. In short, it was not error, let alone abuse of discretion, for the bankruptcy court to conclude that Appellants should be required to pay the fees charged by Huron.

Appellants also claim that the bankruptcy court failed to use a "lodestar" approach when considering the reasonableness of Recipients' legal fees. The court indicated in its order that "the fact that the Recipients paid the invoices [for attorney's fees] might permit the court to infer that the charges were reasonable . . . . The court, however, is unwilling to abdicate its independent role (under the lodestar analysis) in assessing the reasonableness of the charges." (7/23/2015 Mem. of Decision & Order, PageID.102.) After reviewing Recipients' billing records, and hearing testimony from attorney Gosch at Dickinson Wright, the court allowed Recipients to recover $108,906.30 in attorney's fees, a substantial reduction from the nearly $195,000.00 in fees sought by Recipients. (*See id.*, PageID.103.) The court arrived at its calculation, in part, by excluding billing entries that were too redacted to permit the court to evaluate the reasonableness of the charge. The court did not discuss the individual rates charged by Dickinson Wright's attorneys and staff.

Although a more detailed discussion of the billing rates and hourly charges might have provided more insight into the court's analysis, Appellants have not shown that the court abused its discretion in making its award. Appellants assert that a few of the attorneys charged $450 per hour for their services; however, Appellants do not explain why this fact alone renders the court's

decision erroneous or an abuse of discretion, especially considering that Appellants paid far less than $450 per hour overall.

Finally, Appellants claim that the court should have differentiated the fees awarded under Rule 45(d)(1) from fees awarded under 45(d)(2), but this Court cannot discern any error in the court's failure to do so. The bankruptcy court relied on both rules and its award is justified under both.

### B. The Bankruptcy Court Properly Found Appellants in Contempt

In its July 2015 order, the bankruptcy court held that New Products and Demorest would be "jointly and severally liable" to Recipients in a total amount of $166,187.50. (*Id.*, PageID.106.) The court ordered New Products to pay "that sum" to Dickinson Wright, "who shall hold the payment in trust, and distribute it to its clients, as their interest may appear." (*Id.*) Rather than pay the full amount as ordered, Appellants attempted to negotiate a payment plan with Recipients. Recipients refused to accept this proposal and filed a motion to hold Appellants in contempt. Appellants initially responded that payment in full would impose a "substantial hardship" on New Products, but the court found that this statement was "non-specific and conclusory." (10/14/2015 Interim Order, PageID.339.) The court gave Appellants an opportunity to supplement their defense to the contempt motion. In response, Appellants proposed to pay the full amount to the clerk of the court. The court rejected this proposal and found Appellants in contempt.

Holding a party in contempt is a matter of discretion, but the movant must produce clear and convincing evidence that the party "violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Elec. Workers Pension Trust Fund of Local Union No. 58, IBEW v. Gary's Elec. Service Co.*, 340

F.3d 373, 379 (6th Cir. 2003). The evidence must be clear and unambiguous, and any ambiguities must be resolved in favor of the party charged with contempt. *M&C Corp. v. Erwin Behr GmbH & Co.*, 298 F. App'x 927, 935-36 (6th Cir. 2008). Once the movant establishes his prima facie case, the burden shifts to the contemnor who may defend by coming forward with evidence showing that he is presently unable to comply with the court's order. *United States v. Rylander*, 460 U.S. 752, 757 (1983).

In this case, there is no dispute that, on July 23, 2015, the bankruptcy court ordered Appellants to pay a specific sum to Dickinson Wright. Appellants attempted to stay the enforcement of this order, but their motion was denied on August 26. Over two months later, when the court found Appellants in contempt, they had not paid or offered adequate evidence that they were unable to comply with the order. Indeed, their offer of full payment indicated that they were fully able to comply. On these facts, the court acted within its discretion to find Appellants in contempt.

Appellants argue that the July 23 order did not provide a specific deadline for payment, and did not preclude Appellants from paying the judgment over time. To the contrary, the order required payment of a specific sum. It did not provide for payment in partial amounts over an extended period of time. The order did not state a specific deadline for payment, but it did not need to do so. "In contempt proceedings, 'the basic proposition [is] that all orders and judgments of courts must be complied with promptly.'" *Jim Walter Res., Inc. v. Int'l Union, United Mine Workers*, 609 F.2d 165, 168 (5th Cir. 1980) (quoting *Maness v. Meyers*, 419 U.S. 449, 458 (1975)); *accord NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 590 (6th Cir. 1987). The record amply demonstrates that Appellants did not promptly comply with the order. Nothing prevented Appellants from attempting

to work out an agreement with Recipients to pay over time, but by delaying full payment, Appellants took the risk that they would be found in contempt for failing to comply with the court's order.

Appellants contend that the bankruptcy court erred by refusing to stay the sanctions order pending appeal. A few days before the bankruptcy court granted Recipients' motion for contempt, Appellants filed a motion under Rule 62(d) of the Federal Rules of Civil Procedure to "stay collection" of the $166,187.50 pending appeal. (Mot. to Stay, PageID.347.) When the court issued its decision on the motion for contempt, it had not yet scheduled a hearing on the motion for a stay pending appeal. (*See* 11/2/2015 Order Finding Contempt, PageID.68.) Rather than wait for a hearing and a decision on the motion to stay, Appellants paid the full amount due to Dickinson Wright, thereby rendering a stay unnecessary. In other words, the court had no reason to issue a stay preventing Recipients from collecting an amount that Appellants had already paid. Thus, the bankruptcy court properly denied the motion to stay.

Appellants argue that their motion for a stay should have "purged" their contempt. However, Appellants' motion proposed making payment to the clerk of the court, which is not what the court's order required. Appellants also contend that the bankruptcy court erred by not giving them an opportunity to "purge" their contempt. However, Appellants had the opportunity to do so at any time before the Court entered its order finding them in contempt. Indeed, in its interim order on the contempt motion, the court indicated that it was inclined to grant the motion, but that it wanted to give Appellants another opportunity to establish that their failure to pay was not a contempt of the order. (PageID.339.) The court expressly informed Appellants that "nothing in this Order should be construed to preclude New Products and Mr. Demorest from making the payments which, they have

already indicated, they could make pending appeal." (PageID.340.) Had Appellants made such payments, it is possible that the court would not have found them in contempt.

Finally, Appellants argue that the bankruptcy court lacked power to enforce the discovery order through contempt sanctions. According to Appellants, "'[t]he presumption, in federal proceedings, is for monetary obligations to be enforced by entry of a monetary judgment (and, if necessary, execution thereon), and not by contempt.'" (Case No. 1:15-cv-1026, Appellants' Suppl. Br., ECF No. 42, PageID.1891 (quoting *Adelphia Commc'ns Corp. v. Rigas (In re Adelphia Commc'ns Corp.)*, 323 B.R. 345, 394 (Bankr. S.D.N.Y. 2005).) Appellants assert that a writ of execution under Rule 69(a) would have been adequate to enforce the court's order. Rule 69(a) provides that "[a] money judgment is enforced by a writ of execution, unless the court directs otherwise." Fed. R. Civ. P. 69(a).

Appellants' arguments ignore the fact that the bankruptcy court's order requiring payment of Recipients' costs and expenses was not a judgment. Thus, it could not be enforced by a writ of execution. Indeed, Recipients were not parties to the adversary proceedings. Thus, it is not clear how the court could have entered a judgment in their favor. Consequently, the court's contempt power was an appropriate means of enforcing the order. *See Cleveland Hair Clinic, Inc. v. Puig*, 106 F.3d 165, 166 (7th Cir. 1997) ("Use of the contempt power is an appropriate way to enforce a sanction for misconduct, which is not an ordinary money judgment.").

For all the foregoing reasons, Appellants have not shown that any error exists in the bankruptcy court's orders.

**C. Bias**

Appellants claim that the bankruptcy court was biased, and they ask the court to reassign the case on remand under the Court's authority in 28 U.S.C. § 2106. "This Court possesses the power, under appropriate circumstances, to order the reassignment of a case on remand pursuant to 28 U.S.C. § 2106." *Rorrer v. City of Stow*, 743 F.3d 1025, 1049 (6th Cir. 2014). The Court is not remanding the matter; the Court is affirming the bankruptcy court's orders. Thus, the Court rejects Appellants' request for reassignment.

## VI. Conclusion

For the reasons stated herein, the Court discerns no error in the bankruptcy court's orders requiring New Products and Demorest to pay a substantial portion of the costs of compliance with the subpoenas, finding Appellants in contempt for failing to pay as ordered by the court, denying the motions to stay, and imposing a contempt award on Appellants. Accordingly, the Court affirms the bankruptcy court's orders.

An order will enter consistent with this Opinion.


Dated: September 22, 2017                    /s/ Janet T. Neff_____
                                             JANET T. NEFF
                                             United States District Judge